UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MICHAEL D. SCHMIDT,<br><br>        Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. CV 18-01212-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On February 14, 2018, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On July 12, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). On November 9, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting

forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 19).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 7, 2014, Plaintiff, formerly employed as the president of a telephone repair company and the captain of a charter boat (see AR 165-67, 306, 314), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since January 1, 2012. (See AR 21, 287-90). On October 13, 2016, the Administrative Law Judge ("ALJ"), Lawrence Wheeler, heard testimony from Plaintiff (represented by counsel) and vocational expert June Hagen. (See AR 162-86). On October 21, 2016, the ALJ issued a decision denying Plaintiff's application. (See AR 21-30). After determining that Plaintiff had severe impairments -- "degenerative disc disease of the cervical and lumbar spine, status-post L5-S1 fusion in 2007; history of aortic valve replacement; hypertension; and high cholesterol" (AR 23)[1] --, but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 24-25), the ALJ found that Plaintiff had the residual functional

---

[1] The ALJ found that Plaintiff's mental impairments, including adjustment disorder, were non-severe. (AR 16-17).

capacity ("RFC")[2] to perform sedentary work[3] with the following limitations: can lift up to 5 pounds frequently and up to 10 pounds occasionally; can sit 6 hours total in an 8-hour workday; can stand/walk up to 2 hours total in an 8-hour workday; and can kneel, stoop, crouch and crawl frequently. (AR 25-29). The AlJ then determined that Plaintiff was able to perform past relevant work as a sales and service manager as generally performed (AR 29-30) and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30).

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 286). The request was denied on December 13, 2017. (See AR 1-6). Plaintiff now seeks judicial review of the ALJ's Decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

3

Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[4]

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ improperly rejected the opinion of physician's assistant Beth Brown. (See Joint Stip. at 4-8, 21-22).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from legal error.

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

**DISCUSSION**

**A. The ALJ properly rejected Beth Brown's opinion**

Plaintiff asserts that the ALJ did not provide legally sufficient reasons for rejecting Beth Brown's opinion. (See Joint Stip. at 4-11, 14-15). Defendant asserts that the ALJ gave proper reasons for rejecting Beth Brown's opinion. (See Joint Stip. at 12-14).

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b). Only "acceptable medical sources" can give medical opinions. 20 C.F.R. § 404.1527(a)(1); Social Security Ruling ("SSR") 06-03p, *2 (rescinded for claims filed after March 27, 2017, 2017 WL 3928298). A physician's assistant is not an "acceptable medical source," but rather is an "other source." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); SSR 06-03p, *2; but see Molina, supra (indicating that a physician's assistant might be considered a medically acceptable source if he or she worked under a physician's close supervision). The opinion of "other sources" cannot establish the existence of a medically determinable impairment. SSR 06-03p, *2. However, the opinion of "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-03p, *3; Garrison v. Colvin, 759 F.3d 995, 1013-14 (9th Cir. 2014)("other sources" "can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work")(citation and alterations omitted); see also 20 C.F.R. §§ 404.1527(a)(1)("Medical opinions are statements from acceptable medical

sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis . . . ."), (f)(1)("Opinions from medical sources who are not acceptable medical sources . . . may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources."). The factors considered in weighing the opinions of "other sources" are the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization and other factors. 20 C.F.R. §§ 404.1527(f)(1), (c)(1)-(c)(6). The ALJ may discount the testimony of "other sources" if the ALJ "gives reasons germane to each witness for doing so." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014)(citation and internal quotation marks omitted); see also Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir. 2010)(quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Beth Brown, PA-C ("PA Brown"), a physician's assistant at LAGS Spine and Sportscare, treated Plaintff from September 14, 2015 to July 28, 2016. (See AR 403-61).

In a "Cervical Spine Residual Functional Capacity Questionnaire" dated July 14, 2016 ("Cervical Spine Questionnaire"), PA Brown reported that Plaintiff's diagnoses are cervical spondylosis and degenerative disc disease and that Plaintiff's prognosis is a chronic condition. PA Brown stated that Plaintiff has chronic pain/parasthesia based on constant pain that radiates to the bilateral shoulders and gets worse with any activity; that the symptoms of Plaintiff's impairments are

6

tenderness, crepitus, muscle spasm, muscle weakness, chronic fatigue, impaired sleep, impaired appetite, lack of coordination, abnormal posture, swelling, drop things, and reduced group strength; and that Plaintiff's cervical range of motion is 50 percent for extension, left lateral bending and right lateral bending and 30 percent for left rotation, flexion and right rotation. PA Brown stated that Plaintiff has the following symptoms associated with his cervical spine impairment: headeaches (2 times per week, lasting 24 hours, which improved by lying down, taking medication, and being in a quiet place or a dark room); vertigo; malaise; photosensitivy; inability to concentrate; impaired sleep; exhaustion; and visual disturbances. PA Brown also stated that Plaintiff is a malingerer, and that emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations. PA Brown stated that psychological conditions -- depression, somatoform disorder, psychological factors, anxiety -- are reasonably consistent with the symptoms and functional limitations described in the Cervial Spine Questionnaire.

PA Brown opined that Plaintiff's impairments lasted or can be expected to last at least 12 months, and that Plaintiff has the following functional limitations: Plaintiff's pain or other symptoms constantly are severe enough to interfere with attention and concentration needed to perform simple work tasks; Plaintiff is incapable of even "low stress" jobs; Plaintiff cannot walk any city blocks without rest or severe pain; Plaintiff can sit 10 minutes at one time; Plaintiff can stand for 10 minutes at one time; Plaintiff can sit and stand/walk less than 2 hours in an 8-hour workday; Plaintiff must walk every 10 minutes for 5 minutes; Plaintiff needs a job that permits

shifting positions at will from sitting, standing or walking; Plaintiff sometimes (every 5 to 10 minutes) needs to take unscheduled breaks (for 5 to 10 minutes) during an 8-hour workday; Plaintiff can lift and carry up to 10 pounds occasionally, 20 pounds rarely, and never 50 pounds; Plaintiff can rarely look down, turn his head right or left, look up, or hold his head in a static position; Plaintiff can never twist, climb ladders, or climb stairs, and can rarely stoop or crouch/squat; Plaintiff has significant limitations with reaching, including overhead reaching (he can use his right and left arms 10 percent of the time during an 8-hour workday), handling, including grasping, turning and twisting objects (he can use his right and left hands 80 percent of the time during an 8-hour workday), and fingering, including fine manipulations (he can use his right and left fingers 80 percent of the time during an 8-hour workday); Plaintiff impairments are likely to produce "good days" and "bad days"; and on the average Plaintiff is likely to be absent from work more than four days per month as a result of the impairments or treatment. (See AR 549-53).

In a "Lumbar Spine Residual Functional Capacity Questionnaire" dated July 14, 2016 ("Lumbar Spine Questionnaire"), PA Brown stated that Plaintiff's diagnoses are lumbago, lumbar disc degeneration, and fusion of the lumbar spine, and that Plaintiff's prognosis is a chronic condition, and that the fusion of the spine (L4-L5), disc degeneration (L3-L4, as shown by a recent X-ray), and tenderness over the lumbar spine/paraspinals show Plaintiff's impairments. PA Brown stated that Plaintiff's symptoms are constant pain and constant fatigue (Plaintiff cannnot sleep although he is taking insomnia medication). PA Brown stated that Plaintiff has a constant, sharp, aching pain (5 to 10 pain

level) in the lumbar L4-L5 area which gets worse when walking, sitting or standing and does not necessarily improve with rest. PA Brown stated that positive objective signs of pain are reduced range of motion (to about 50 percent), sensory loss, reflex changes, tenderness, crepitus, swelling, muscle spasm, muscle weakness and impaired sleep. PA Brown stated that emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations. PA Brown stated that Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the Lumbar Spine Questionnaire. PA Brown stated that the side effects of Plaintiff's medications are daily dizziness and drowsiness and almost daily stomach upset.

PA Brown provided the same opinions about the duration of Plaintiff's impairments and Plaintiff's functional limitations as in the Cervical Spine Questionnaire, adding that, with prolonged sitting, Plaintiff's legs should be elevated waist high and should be elevated 25 percent of the time during an 8-hour workday for a sedentary job. PA Brown did not provide opinions about whether Plaintiff was capable of even "low stress" jobs, Plaintiff's head position, or about reaching, handling or fingering limitations. PA Brown stated that the description of the symptoms and limitations in the Lumbar Spine Questionnaire go back to 2011. (See AR 554-57, 559).

In a "Medical Statement Regarding Shoulders for Social Security Desability Claim" dated July 28, 2016, PA Brown stated that Plaintiff has problems with limitation of motion, weakness, pain and tendinitis in the left and right shoulders. (AR 525). PA Brown opined about Plaintiff's limitations and abilities as follows: Plaintiff cannot work

any hours per day; Plaintiff can stand at one time for 15 minutes; Plaintiff can sit at one time for 15 minutes; Plaintiff can lift 10 pounds occasionally, but cannot lift any weight frequently; Plaintiff can use his left arm below shoulder level occasionally; Plaintiff cannot raise his right or left arms over shoulder level; and Plaintiff suffers from moderate to severe pain. (Id.).

The ALJ described PA Brown's treatment of Plaintiff as follows:

> Meanwhile, in September 2015, the claimant initiated specialized treatment with a physician's assistant, Beth Brown, P.A.-C, at LAGS Spine and Sports Care Center (Exhibit 5F). At that time, he reported primarily neck pain and a history of fusion of the lumbar spine in 2007, which wsa noted to be "stable" at that time (Id. at 60). Upon examination, the claimant demonstrated decreased range of motion of the cervical and lumbar spine, tenderness of the cervical spine, negative straight leg raising tests, normal motor strength, sensation, and reflexes, in the bilateral upper and lower extremities (Id. at 60). He continued to see Ms. Brown on a monthly basis for the remainder of 2015 during which the clinical findings noted during examination did not drastically change, and he was consistently represcribed narcotic pain medications (Id. at 30-60). In December 2015, the claimant underwent his first of two medical (sic) branch blocks to the cervical spine (Id. at 43), followed by a second in February 2016 (Id. at 32). In April 2016, the claimant underwent neurolyis of the cervical spine in an

attempt to control ongoing neck pain (Id. at 21). In June 2016, the claimant reported ongoing neck pain and, additionally, back pain, for which Ms. Brown ordered trigger point injections (Id. at 10-20). Upon physical examination in July 2016, the claimant continued to exhibit decreased range of motion of the lumbar spine, but negative straight leg raising tests (Id. at 5). His sensation in the lower extremities was normal, and his motor strength in the lower extremities continued to be normal (Id. at 5). Additionally, he demonstrated some tenderness and loss of lordosis of the lumbar spine (Id.). He also demonstrated decreased range of motion of the cervical spine, but normal motor strength and sensation in the upper extremities.

(AR 27).

After briefly summarizing PA Brown's opinions (see AR 29), the ALJ addressed PA Brown's opinions as follows:

[T]he undersigned affords the opinion of Ms. Brown little weight for several reasons. First and foremost, although Ms. Brown is the claimant's treating physician's assistant, her opinion is not entitled to controlling weight because, as an assistant, she is not considered an acceptable medical source under the Regulations (20 CFR 404.1527(a)(2), 416.927(a)(2), SSR 96-2p; and SSR 06-03p). Additionally, Ms. Brown indicates that the claimant has extremely restrictive work-related limitations; but her progress notes do not support his (sic)

11

findings. The basis for Ms. Brown's opinion is therefore unclear, and the undersigned gives it little weight.

(AR 25).

The ALJ's first reason for discounting PA Brown's opinion - that she was a physician's assistant - was impermissible. See Haagenson v. Colvin, 656 Fed. Appx. 800 (9th Cir. 2016)("The only reason that the ALJ offered for rejecting their opinions is that they are not 'acceptable medical sources' within the meaning of the federal regulation. However, the regulation already presumes that nurses and counselors are non-acceptable medical sources, yet still requires the ALJ to consider them as 'other sources.'").

However, the ALJ's second reason -- that PA Brown's progress notes did not support her restrictive opinions about Plaintiff's work limitations -- was a germane reason for discounting her opinions. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)("Inconsistency with medical evidence" is a germane reason for discounting the opinion of a lay witness.); Lewis, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); Molina, 674 F.3d at 1112 (the ALJ's finding that the physician assistant's opinion was conclusory and conflicted with her earlier assessment was a germane reason for discounting the opinion); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)("The ALJ properly discounted lay testimony that conflicted with the available medical evidence.").

PA Brown's Progress Notes dated September 14, 2015, state, <u>inter alia</u>, that Plaintiff went for the first time to the LAGS Spine and Sportscare for neck and bilateral shoulder pain (local, stiff and swollen, a pain level of 3 to 4); Plaintiff had had chronic neck pain for several years; Plaintiff was managing the pain with injections, HEP and medications (Noroco and Tramadol for pain, Ambien for sleep); Plaintiff's lumbar spine fusion (L4-L5) was stable; a bilateral lumbar examination revealed an abnormal lumbar spine range of motion (45 degrees of true flexion, 10 degree of extension, 15 degrees of right lateral flexion, 15 degrees of left lateral flexion, 10 degrees or right rotation, and 10 degrees of left rotation), negative straight leg tests, a negative Slump test, a positive Patrick test, a positive Reverse Thomas test, a normal lower extremity neurological examination, normal sensation, normal motor strength, no tenderness to palpation over the bilateral lumbar paraspinals, bilateal thoracic paraspinals, and bilateral SI Joints, and tenderness to palpation over the lumbar facet joints; a cervical examination revealed abnormal cervical spine range of motion (15 degrees of flexion, 20 degrees of extension, 65 degrees of right rotation, 20 degrees of right rotation, 65 degrees of left rotation, 20 degrees of right lateral flexion, and 20 degrees of left lateral flexion), a normal upper extremity neurological exam, 0 out of 18 trigger points and no tenderness to palpation over the biceps tendon, suprasupinatus tendon, cervical paraspinals and trapezius, normal sensation, normal reflexes, (following reflexes) 0 out of 18 trigger points and no tenderness to palpation over the biceps tendon, supraspinatus tendon, AC Joint, and trapezius, and tenderness to palpation over the cervical paraspinals. (<u>See</u> AR 458-61).

13

Progress Notes dated October 14, 2015, November 13, 2015, December 11, 2015, January 11, 2016, February 9, 2016, March 4, 2016, April 4, 2016, May 4, 2016, June 3, 2016, June 29, 2016, July 14, 2016, and July 28, 2016, state, <u>inter</u> <u>alia</u>, that Plaintiff continued to complain about pain in his neck, lower back and bilateral shoulders (pain level range of 3-6); after receiving medial branch blocks for spondylosis of the cervical joint, Plaintiff reported getting 40 percent pain relief overall, that the medial branch blocks "worked for him" and that he "had excellent relief from both blocks, about 50% for at least 4 hours; Ambien and Norco were refilled, Norco intake was increased temporarily; Nortryptyline for sleep was prescribed; epidural steroid injections within the past two years were successful; Plaintiff slept 3 to 4 hours per night, and woke up not rested; Plaintiff's pain was improved with medications which did not have any side effects; Plaintiff denied fatigue; Plaintiff admitted joint stiffness and painful joints; and bilateral lumbar and cervical examinations revealed, with few exceptions, the same results as on September 14, 2015. (<u>See</u> AR 403-06, 413-20, 423-30, 434-41, 445-56).

An Operative Report dated December 24, 2016 states, <u>inter</u> <u>alia</u>, that Plaintiff received a cervical medial branch blocks and reported pre-operative pain of 4/10 and post-operative pain of 0/10. Operative Reports dated February 22, 2016 and April 25, 2016 report, <u>inter</u> <u>alia</u>, that Plaintiff received a cervical medial branch radiofrequency neurolysis and reported pre-operative pain of 6/10 and post-operative pain of 1/10. (<u>See</u> AR 421-22, 432-33). In June 2016, Plaintiff had a trigger point injection in the lumbar spine, and "tolerated the procedure well, with decreased pain post procedure." (<u>See</u> AR 411-12).

14

The notations in PA Brown's Progress Notes and Operative Reports, as discussed above, do not reflect or show that Plaintiff's functional work abilities were severely limited. Therefore, the ALJ's determination that PA Brown's Progress Notes do not support PA Brown's opinions about Plaintiff's work limitations is supported by the record.

Although the ALJ's first reason for discounting PA Brown's opinions was improper, the fact that the ALJ gave a germane reason for discounting PA Brown's opinions renders the error harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038(9th Cir. 2008)(an ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'"); Burch, supra, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.").

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 28, 2018

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

15